UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

ANDREW RIPPERT,                          )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )          Civil Action No.
                                         )
ARCH CAPITAL GROUP, LTD.,                )
                                         )
                    Defendant.           )
                                         )
_____)

## COMPLAINT

Andrew Rippert, by his attorneys, Lawson & Weitzen, LLP, for his complaint against

Defendant Arch Capital Group, Ltd. ("Arch") states as follows:

## PARTIES

1.      Plaintiff Andrew Rippert is a resident of the Commonwealth Massachusetts.

2.      On information and belief, Defendant Arch is a Bermuda public limited liability

company with a principal place of business in Bermuda.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.

§ 1332(a).  The matter in controversy in this action exceeds the sum or value of $75,000.

4.      This Court has personal jurisdiction over Arch pursuant to Mass. Gen. Laws ch.

223A §§ 3(a) and (b), and the Due Process Clause of the United States Constitution.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and (3).

## FACTUAL BACKGROUND

***Arch Capital Group, Ltd. is a Specialty Insurer and Reinsurer.***

1.      As described on its website, www.archcapgroup.com, Arch is a Bermuda public limited liability company that "writes insurance, reinsurance and mortgage insurance on a worldwide basis."

2.      According to Arch's website: "Arch Capital's current operations began in 2001 when our reinsurance operations were launched to meet a need for capacity.  Through thoughtful organic growth and strategic acquisitions, Arch has evolved into a leading diversified specialty insurer and reinsurer.  We have expanded into insurance and mortgage insurance with operations around the globe."

6.      According to a "Consolidated Corporate Overview" available on Arch's website, as of June 30, 2019, Arch had approximately $12.49 billion in capital and $31.40 billion in total assets.

***Mr. Rippert oversaw Arch's transformation from a new entrant in the U.S. mortgage insurance market in 2014 to the industry leader.***

7.      Mr. Rippert commenced employment with Arch in 2010.  From September 2010 until January 2014, he was Executive Vice President of Arch Reinsurance Ltd.

8.      In January 2014, Arch appointed Mr. Rippert Chief Executive Officer ("CEO") of Arch's Global Mortgage Group.

*9.*      During his tenure as CEO of the Global Mortgage Group at Arch, Mr. Rippert was in charge of a network of operations that provided mortgage insurance and reinsurance around the world. As CEO of the Global Mortgage Group, Mr. Rippert was responsible for leading and managing global mortgage credit risk operations for Arch, including mortgage insurance, reinsurance and credit risk transfer transactions in, among other areas, the United

States, Europe, Australia, and Asia.

10.     Three revenue and profit producing groups at Arch reported to Mr. Rippert: domestic United States operations, international mortgage insurance operations, and alternative markets.

11.     Mr. Rippert oversaw Arch's transformation from a new entrant in the U.S. mortgage insurance market in 2014 to the industry leader, primarily through the 2017 acquisition of mortgage insurer United Guaranty Corporation from American International Group, Inc. Mr. Rippert's leadership was also instrumental in the development of reinsurance execution for GSE credit risk transfer transactions under Freddie Mac's Agency Credit Insurance Structure transactions and the development of innovative programs at Freddie Mac and Fannie Mae.

12.     Mr. Rippert's success as CEO of the Global Mortgage Group was substantial and well-documented.  Underwriting income at Arch increased from $20,579,000 in 2013, the year before Mr. Rippert was appointed CEO of the Global Mortgage Group, to $856,593,000 in 2018.

13.      In addition, Mr. Rippert gained recognition as a leader in the mortgage industry, was appointed to the boards of the Mortgage Bankers Association and the Housing Policy Council, and testified before the United States Congress on issues relating to the housing finance industry.  In 2017, when Mr. Rippert was named to the board of directors for the Mortgage Bankers Association, Marc Grandisson, the then President and Chief Operating Officer of Arch, stated, "Andrew is a thought leader and keen student of the mortgage industry."

14.     While Arch identified Bermuda as Mr. Rippert's place of employment, at all times relevant to the events set forth herein, including between 2016 and 2019, Mr. Rippert resided in and worked predominantly in Massachusetts. In fact, while Mr. Rippert was employed at Arch, multiple executives whom Arch identified as being employed in Bermuda worked

primarily from their personal residences located in the United States.

15.     In 2016, while he made occasional visits to Arch's offices in Bermuda, Mr. Rippert worked for Arch primarily in the United States, splitting his time between Massachusetts, Washington D.C., and North Carolina.

16.     In 2017 and 2018, Mr. Rippert again made occasional visits to Arch's Bermuda offices, but he worked for Arch primarily in Massachusetts and Washington D.C.

17.     In 2019, prior to his termination, Mr. Rippert worked for Arch almost exclusively in Massachusetts.

18.     Between 2016 and 2019, while working in Massachusetts, Mr. Rippert regularly engaged in communications, including via telephone and email, with Arch management, employees and employees of Arch subsidiaries who reported to him.

19.     Between 2016 and 2019, Mr. Rippert participated in approximately one dozen meetings at the Boston offices of an Arch subsidiary, including meetings with employees of Arch and Arch subsidiaries who reported to him, where he conducted business on behalf of Arch.

***Arch Removed Mr. Rippert as CEO of the Global Mortgage Group in February 2019 and Terminated His Employment in July 2019.***

20.     Notwithstanding Mr. Rippert's demonstrably successful tenure as CEO of Arch's Global Mortgage Group and his stellar reputation in the housing finance industry, as well as the support of Arch directors, in February 2019, Mr. Grandisson removed Mr. Rippert as CEO of the Global Mortgage Group.

21.     On information and belief, Mr. Grandisson made the decision to remove Mr. Rippert as CEO of the Global Mortgage Group because he viewed Mr. Rippert as a successful rival who was beginning to eclipse Mr. Grandisson's own accomplishments, particularly as Mr.

Rippert was gaining increased notoriety in the mortgage industry though his appearances before

Congress and involvement in leading industry groups such as the Mortgage Banking Association.

22.     On February 6, 2019, Mr. Rippert met with Mr. Grandisson and Carl Sullo, Chief

Human Resources Officer at Arch, who notified him that Arch was removing him from the

position of CEO of the Global Mortgage Group.  Asserting without basis that Mr. Rippert was

"difficult to work with," Mr. Grandisson stated, "We need to find something else for you to do."

Mr. Rippert denied the assertion and informed Mr. Grandisson that the decision to remove him as

CEO of the Arch Global Mortgage Group was yet another of Mr. Grandisson's multiple attempts

in recent years to undermine Mr. Rippert's credibility and to attack him personally and

professionally.

23.     For at least two weeks, Arch did not inform Mr. Rippert what his new position

would be or what the duties of the new position would be.

24.     On February 26, 2019, Arch presented Mr. Rippert with a draft communication

from Mr. Grandisson to Arch employees concerning Mr. Rippert's new position at Arch.  The

draft communication stated in part:

> Envisioning and implementing bold (and sometimes disruptive) business models isn't
> always easy, but it's central to who we are and worth the investment to pursue. For some
> time now, we've been looking to establish a group dedicated to innovation and growth
> across the enterprise, believing that pursuing new business models and understanding
> about how technology will affect our businesses is critical to Arch's long-term success.
>
> In recent months these discussions have advanced as someone on the leadership team
> began to express interest in leading an Innovation group. I'm pleased to announce that
> Andrew Rippert has been named Arch's first Chief Innovation and Strategic Investment
> Officer, reporting to me.
>
> In this role, Andrew will focus his attention on some of the critical issues facing the
> Mortgage Group in the housing finance industry, work to ensure a standardized approach
> to government relations across our operating units and engage with leaders across all of
> our business lines to pursue new ideas and opportunities. The goal is for us to prepare for

the next several decades and insure that we are approaching our business as the disruptors, instead of the disrupted.

25.     On March 1, 2019, Arch publicly announced Mr. Rippert's removal as CEO of the Global Mortgage Group and his appointment as Chief Innovation and Strategic Investment Officer.

26.     Also on March 1, 2019 Mr. Rippert emailed a "term sheet" to Mr. Grandisson and Mr. Sullo setting forth proposed terms of an agreement to govern Arch's engagement of Mr. Rippert as Chief Innovation and Strategic Investment Officer.

27.     Mr. Grandisson did not respond to Mr. Rippert's term sheet proposing terms governing his employment as Chief Innovation and Strategic Investment Officer.

28.     Mr. Rippert had serious concerns that Mr. Grandisson had no intention of assigning any significant duties to him in his new position, but instead intended to isolate Mr. Rippert and effectively deprive him of the opportunity to make use of his expertise, experience and reputation in the housing finance industry, and to damage Mr. Rippert's career in that industry.

29.     Those concerns proved to be well founded.

30.     On Sunday, March 17, 2019, Mr. Rippert met with Mr. Grandisson for approximately one hour at the Crown & Anchor Cafe within the Hamilton Princess, Bermuda. The purpose of the meeting was to discuss Mr. Rippert's proposed terms of an agreement to govern his new position at Arch.

31.     Mr. Grandisson told Mr. Rippert that in his new position at Arch, Mr. Rippert will not run any businesses that he innovates or develops for Arch.  Rather, the new businesses will be taken from him and given to someone else.  Mr. Grandisson told Mr. Rippert that he should not care what becomes of the business innovations he develops because Arch is going to pay him and

that is all that matters.

32.     Mr. Grandisson stated at the meeting that he will not provide Mr. Rippert with any staff to fulfill his responsibilities in his new position at Arch.

33.     Mr. Rippert informed Mr. Grandisson that the past twenty-five (25) years of his career had been entirely within the housing finance industry and he could not simply walk away from that career.  Mr. Grandisson responded: "Well, that is what you will do if you are to remain employed by Arch."

34.     Even though the stated purpose of the March 17 meeting was to discuss Mr. Rippert's term sheet setting forth proposed terms for an employment agreement governing Arch's employment of Mr. Rippert as Chief Innovation and Strategic Investment Officer, Mr. Grandisson did not even respond to Mr. Rippert's term sheet.

35.     In fact, Mr. Grandisson specifically stated that he would not provide Mr. Rippert any feedback on Mr. Rippert's term sheet until Mr. Rippert assured him he was willing to stay at Arch.

36.     Mr. Grandisson told Mr. Rippert to take two weeks and think about what he wants to do, and if Mr. Rippert agreed to stay at Arch, Mr. Grandisson would respond to the term sheet. Alternatively, Mr. Grandisson stated, Mr. Rippert could work for the next six months and figure out what he wanted to do.

37.     On March 28, 2019, Mr. Rippert informed Mr. Grandisson that he was interested in an amicable separation from Arch. Mr. Grandisson assured Mr. Rippert that the details of the separation would be worked out after Mr. Grandisson's vacation.  Mr. Grandisson asked Mr. Rippert to keep quiet about his plans for the next three (3) to six (6) months and told Mr. Rippert that that he will do "everything he can" to compensate Mr. Rippert for the value he created for

Arch.

38.     On April 15, 2019, through counsel, Mr. Rippert gave Arch written notice of his intention to resign from Arch.

39.     On April 22, 2019, Arch directed that Mr. Rippert begin a Garden Leave for six (6) months and that he "perform no duties" during that period.

40.     During the Garden Leave, Mr. Rippert continued to comply with his obligations to Arch in all respects.

41.     Nonetheless, on July 19, 2019, Arch terminated Mr. Rippert's employment, purportedly "for Cause."

42.     In fact, Arch had no Cause to terminate Mr. Rippert's employment.

***While Mr. Rippert was Employed by Arch, Arch Awarded him Stock Options and Shares of Company Stock, and He Earned Annual Bonuses.***

43.     During his employment at Arch, Mr. Rippert and Arch entered into a number of compensation agreements.

44.     Between 2016 and 2019, Arch and Mr. Rippert entered in four (4) Non-Qualified Stock Option Agreements, pursuant to which Arch granted Mr. Rippert options to purchase shares of Arch stock.

45.     Except for the number of options and the purchase price for the option shares, the terms of each Non-Qualified Stock Option Agreement are essentially identical.

46.     Each Non-Qualified Stock Option Agreement sets forth, *inter alia,* the number of options Arch granted to Mr. Rippert and the purchase price for the option shares.   Each agreement further provides that the "Option shall become exercisable in three equal annual installments on the first, second and third anniversaries of the Date of Grant."   Each Non-Qualified Stock Option Agreement contains a New York choice of law provision.

47.     Each agreement also provides that if Arch terminates Mr. Rippert for "Cause as such term is defined in the Company's Incentive Compensation Plan on the date" of the Non-Qualified Stock Option Agreement, "the Option shall immediately cease to be exercisable and shall be immediately forfeited."

48.     The Arch Incentive Compensation Plan in effect on the dates of each Non-Qualified Stock Option Agreement is the Third Amended and Restated Arch Capital Group Ltd. Incentive Compensation Plan (the "Incentive Compensation Plan"). The Incentive Compensation Plan contains a New York choice of law provision.

49.     The Incentive Compensation Plan defines "Cause" as:

(a) theft or embezzlement by the Eligible Employee with respect to the Company or its Subsidiaries; (b) malfeasance or negligence in the performance of the Eligible Employee's duties; (c) the commission by the Eligible Employee of any felony or any crime involving moral turpitude; (d) willful or prolonged absence from work by the Eligible Employee (other than by reason of disability due to physical or mental illness); (e) failure, neglect or refusal by the Eligible Employee to adequately perform his or her duties and responsibilities as determined by the Company; (f) continued and habitual use of alcohol by the Eligible Employee to an extent which materially impairs the Eligible Employee's performance of his or her duties without the same being corrected within ten (10) days after being given written notice thereof; or (g) the Eligible Employee's use of illegal drugs without the same being corrected within ten (10) days after being given written notice thereof.

50.     A copy of the Incentive Compensation Plan is attached hereto as Exhibit 1.

51.     In the 2016 Non-Qualified Stock Option Agreement, dated May 13, 2016, Arch granted Mr. Rippert options to purchase 13,020 shares at an option price of $71.70, which, after a three-for-one share split in June 2018, was adjusted to $23.90.

52.     On May 13, 2017, one-third of the 2016 Option award became exercisable, and on May 13, 2018, a second third of the 2016 Option award became exercisable.  Prior to his termination from Arch, Mr. Rippert exercised the options which became exercisable in 2017 and 2018.

53.     On May 13, 2019, the remaining 4,340 options granted in the 2016 Non-Qualified Stock Option Agreement became exercisable.

54.     On August 27, 2019, while in Massachusetts, Mr. Rippert attempted to exercise the 4,340 options that were exercisable under the 2016 Non-Qualified Stock Option Agreement. Arch stock traded at approximately $39 per share on that date.

55.     On August 27, 2019, Arch prevented Mr. Rippert from exercising the 4,340 options that were exercisable under the 2016 Non-Qualified Stock Option Agreement.

56.     On October 24, 2019, while in Massachusetts, Mr. Rippert again attempted to exercise the 4,340 options that were exercisable under the 2016 Non-Qualified Stock Option Agreement. Arch stock traded at approximately $41 per share on that date.

57.     On October 24, 2019, Arch again prevented Mr. Rippert from exercising the 4,340 options that were exercisable under the 2016 Non-Qualified Stock Option Agreement.

58.     On information and belief, Arch prevented Mr. Rippert from exercising the options because it determined that it terminated Mr. Rippert for Cause on July 19, 2019, and that he forfeited the 4,340 options that were otherwise exercisable under the 2016 Non-Qualified Stock Option Agreement.

59.     In fact, Arch did not have Cause to terminate Mr. Rippert on July 19, 2019 and by preventing Mr. Rippert from exercising the 4,340 options and by depriving him of those options, Arch breached the 2016 Non-Qualified Stock Option Agreement, and thereby caused harm to Mr. Rippert.

60.     In the 2017 Non-Qualified Stock Option Agreement, dated May 8, 2017, Arch granted Mr. Rippert options to purchase 19,590 shares of Arch stock at an option price of $96.26, which, after a three-for-one share split in June 2018, was adjusted to $32.08.

61.     On May 18, 2018, one-third of the 2017 Option Award became exercisable. Prior to his termination from Arch, Mr. Rippert exercised the options which became exercisable in 2018.

62.     On May 8, 2019, one-third of the 2017 Option Award, or 6,530 options, became exercisable.  Mr. Rippert has not yet attempted to exercise those options.

63.     On information and belief, Arch has determined that it terminated Mr. Rippert for Cause on July 19, 2019, and that he forfeited all unexercised options under the 2017 Non-Qualified Stock Option Agreement.

64.     In fact, Arch did not have Cause to terminate Mr. Rippert on July 19, 2019 and by depriving him of unexercised options that Mr. Rippert received pursuant to the 2017 Non-Qualified Stock Option Agreement, Arch breached the 2017 Non-Qualified Stock Option Agreement, and thereby caused harm to Mr. Rippert.

65.     In the 2018 Non-Qualified Stock Option Agreement, dated May 11, 2018, Arch granted Mr. Rippert options to purchase 41,634 shares of Arch stock at an option price of $26.55. A copy of the 2018 Non-Qualified Stock Option Agreement is attached as Exhibit 2.

66.     On May 11, 2019, one-third of the 2018 Option Award, or 13,878 options, became exercisable.

67.     On August 27, 2019, while in Massachusetts, Mr. Rippert attempted to exercise the 13,878 options that were exercisable as of that date under the 2018 Non-Qualified Stock Option Agreement.  Arch stock traded at approximately $39 per share on that date.

68.     On August 27, 2019, Arch prevented Mr. Rippert from exercising the 13,878 options that were exercisable as of that date under the 2018 Non-Qualified Stock Option Agreement.

69.     On October 25, 2019, while in Massachusetts, Mr. Rippert again attempted to exercise the 13,878 options that were exercisable as of that date under the 2018 Non-Qualified Stock Option Agreement.  Arch stock traded at approximately $41 per share on that date.

70.     On October 25, 2019, Arch again prevented Mr. Rippert from exercising the 13,878 options that were exercisable as of that date under the 2018 Non-Qualified Stock Option Agreement.

71.     On information and belief, Arch prevented Mr. Rippert from exercising the 13,878 options because it determined that it terminated Mr. Rippert for Cause on July 19, 2019, and that he forfeited the 13,878 options that were otherwise exercisable under the 2018 Non-Qualified Stock Option Agreement, as well as those options that had not yet become exercisable under the 2018 Non-Qualified Stock Option Agreement.

72.     In fact, Arch did not have Cause to terminate Mr. Rippert on July 19, 2019 and by preventing Mr. Rippert from exercising the 13,878 options and by depriving him of exercisable options, as well as depriving him of the remaining options that are not yet exercisable, Arch breached the 2018 Non-Qualified Stock Option Agreement, and thereby caused harm to Mr. Rippert.

73.     In the 2019 Non-Qualified Stock Option Agreement, dated February 29, 2019, Arch granted Mr. Rippert options to purchase 44,248 shares of Arch stock at an option price of $32.67 per share.

74.     To date, the options that Arch granted to Mr. Rippert in the 2019 Non-Qualified Stock Option Agreement have not become exercisable.

75.     On information and belief, Arch determined that it terminated Mr. Rippert for Cause on July 19, 2019, and that he forfeited the 44,248 options that Arch awarded him in the

2019 Non-Qualified Stock Option Agreement.

76.     In fact, Arch did not have Cause to terminate Mr. Rippert on July 19, 2019 and by depriving him of the 44,248 options Arch awarded him in the 2019 Non-Qualified Stock Option Agreement, Arch breached the 2019 Non-Qualified Stock Option Agreement, and thereby caused harm to Mr. Rippert.

77.     In each of 2017, 2018, and 2019, Arch and Mr. Rippert entered into a Restricted Share Agreement, pursuant to which Arch awarded Mr. Rippert restricted shares of Arch stock. Each agreement provides that the award "shall become vested in three equal installments on the first, second and third anniversaries of the date" of the agreement.

78.     Except for the number of restricted shares awarded, the terms of each Restricted Share Agreement Agreement are essentially identical.  Each agreement contains a New York choice of law provision.

79.     Each agreement also provides that if Arch terminates Mr. Rippert for "Cause," as such term is defined in the Incentive Compensation Plan, any unvested restricted shares "shall be forfeited . . . and become the property of the Company."

80.     In the 2017 Restricted Share Agreement, dated May 8, 2017, Arch awarded Mr. Rippert 19,590 restricted shares of Arch stock.  On May 8, 2018, 6,530 restricted shares Arch awarded to Mr. Rippert in the 2017 Restricted Share Agreement vested.  On May 8, 2019, an additional 6,530 restricted shares Arch awarded to Mr. Rippert vested.

81.     On information and belief, Arch determined that it terminated Mr. Rippert for Cause on July 19, 2019, and that he forfeited the remaining 6,530 unvested shares that Arch awarded him the 2017 Restricted Share Agreement.

82.     In fact, Arch did not have Cause to terminate Mr. Rippert on July 19, 2019 and by

depriving him of the 6,530 unvested shares Arch awarded him in the 2017 Restricted Share Agreement, Arch breached the 2017 Restricted Share Agreement, and thereby caused harm to Mr. Rippert.

83.     In the 2018 Restricted Share Agreement, dated May 11, 2018, Arch awarded Mr. Rippert 9,327 restricted shares of Arch stock.  On May 11, 2019, 3,109 restricted shares Arch awarded to Mr. Rippert in the 2018 Restricted Share Agreement vested.  A copy of the 2018 Restricted Share Agreement is attached hereto as Exhibit 3.

84.     On information and belief, Arch determined that it terminated Mr. Rippert for Cause on July 19, 2019, and that he forfeited the remaining 6,218 unvested shares to which he is otherwise entitled under the 2018 Restricted Share Agreement.

85.     In fact, Arch did not have Cause to terminate Mr. Rippert on July 19, 2019 and by depriving him of the 6,218 unvested shares Arch awarded him in the 2018 Restricted Share Agreement, Arch breached the 2018 Restricted Share Agreement, and thereby caused harm to Mr. Rippert.

86.     In the 2019 Restricted Share Agreement, dated February 28, 2019, Arch awarded Mr. Rippert 8,571 restricted shares of Arch stock.  None of these shares has vested.

87.     On information and belief, Arch determined that it terminated Mr. Rippert for Cause on July 19, 2019, and that he forfeited the 8,571 unvested shares to which he is otherwise entitled under the 2019 Restricted Share Agreement.

88.     In fact, Arch did not have Cause to terminate Mr. Rippert on July 19, 2019 and by depriving him of the 8,571 unvested shares Arch awarded him in the 2019 Restricted Share Agreement, Arch breached the 2019 Restricted Share Agreement, and thereby caused harm to Mr. Rippert.

89.     On May 11, 2018, Arch and Mr. Rippert entered into a Performance Restricted Share Agreement, pursuant to which Arch awarded Mr. Rippert restricted shares of Company stock, the exact number of which is to be based on the level of achievement of certain performance goals during the period beginning on January 1, 2018 and ending on December 31, 2020.  The 2018 Performance Restricted Share Agreement contains a New York law choice of law provision.  A copy of the 2018 Performance Restricted Share Agreement is attached hereto as Exhibit 4.

90.     Pursuant to the 2018 Performance Restricted Share Agreement, the 2018 Award vests on March 10, 2021. The agreement further provides that the 2018 Award shall be forfeited by Mr. Rippert and become the property of Arch if, prior to the date on which the awarded shares become vested, Arch terminates Mr. Rippert for "Cause," as such term is defined in the Incentive Compensation Plan.

91.     On information and belief, Arch determined that it terminated Mr. Rippert for Cause on July 19, 2019, and that he forfeited any shares to which he may become entitled under the 2018 Performance Restricted Share Agreement.

92.     In fact, Arch did not have Cause to terminate Mr. Rippert on July 19, 2019 and by depriving him of the shares to which he would otherwise be entitled under the 2018 Performance Restricted Share Agreement, Arch breached the 2018 Performance Restricted Share Agreement, and thereby caused harm to Mr. Rippert.

93.     On February 28, 2019, Arch and Mr. Rippert entered into a Performance Restricted Share Agreement, pursuant to which Arch awarded Mr. Rippert restricted shares of Company stock, the exact number of which is to be based on the level of achievement of certain performance goals during the period beginning on January 1, 2019 and ending on December 31,

2021.  The 2019 Performance Restricted Share Agreement contains a New York law choice of law provision.

94.     Pursuant to the 2019 Performance Restricted Share Agreement, the award to Mr. Rippert vests on March 10, 2022. The agreement further provides that the 2019 Award shall be forfeited by Mr. Rippert and become the property of Arch if, prior to the date on which the awarded shares become vested, Arch terminates Mr. Rippert for "Cause," as such term is defined in the Incentive Compensation Plan.

95.     On information and belief, Arch determined that it terminated Mr. Rippert for Cause on July 19, 2019, and that he forfeited any shares to which he would otherwise be entitled under the 2019 Performance Restricted Share Agreement.

96.     In fact, Arch did not have Cause to terminate Mr. Rippert on July 19, 2019 and by depriving him of the shares to which he may become entitled under the 2019 Performance Restricted Share Agreement, Arch breached the 2019 Performance Restricted Share Agreement, and thereby caused harm to Mr. Rippert.

97.     Pursuant to the Second Amended and Restated Arch Capital Group Ltd. Incentive Compensation Plan, Mr. Rippert earned annual bonus compensation awards for plan years 2014 and 2015.  A copy of the Second Amended and Restated Arch Capital Group Ltd. Incentive Compensation Plan is attached hereto as Exhibit 5.

98.     The Second Amended and Restated Arch Capital Group Ltd. Incentive Compensation Plan provides for a payout period of four years, and the amount of each year's payment is to be based on Company performance through the end of the calendar year immediately preceding the year of the payment.  The Second Amended and Restated Arch Capital Group Ltd. Incentive Compensation Plan contains a New York choice of law provision.

99.     Pursuant to the Incentive Compensation Plan, Mr. Rippert earned annual bonus compensation awards for plan years 2016 and 2017.

100.     The Incentive Compensation Plan provides for a payout period of four years, and the amount of each year's payment is to be based on Company performance through the end of the calendar year immediately preceding the year of the payment.

101.     The Second Amended and Restated Arch Capital Group Ltd. Incentive Compensation Plan and the Incentive Compensation Plan provide that Mr. Rippert must be employed by Arch at the time of the payment of the award, unless he is terminated by Arch but not with Cause, as defined in the Second Amended and Restated Arch Capital Group Ltd. Incentive Compensation Plan and the Incentive Compensation Plan, in which case the award is not subject to the condition of continuing employment.

102.     On information and belief, Arch determined that it terminated Mr. Rippert for Cause on July 19, 2019, and that he is no longer entitled to payment of annual bonus compensation awards to which he would otherwise be entitled under the Second Amended and Restated Arch Capital Group Ltd. Incentive Compensation Plan and the Incentive Compensation Plan.

103.     In fact, Arch did not have Cause to terminate Mr. Rippert on July 19, 2019 and by depriving him of the annual bonus compensation awards to which he would otherwise be entitled under the Second Amended and Restated Arch Capital Group Ltd. Incentive Compensation Plan and the Incentive Compensation Plan, Arch breached its obligations to pay Mr. Rippert the annual bonus compensation awards to which he would otherwise be entitled under the Second Amended and Restated Arch Capital Group Ltd. Incentive Compensation Plan and the Incentive Compensation Plan, and thereby caused harm to Mr. Rippert.

## COUNT ONE
## BREACH OF NON-QUALIFIED STOCK OPTION AGREEMENTS

104.    Mr. Rippert repeats and incorporates by reference the allegations in Paragraphs 1-103.

105.    Pursuant to each of the Non-Qualified Stock Option Agreements, Arch granted Mr. Rippert options to purchase shares of Arch stock.

106.    Arch has prevented Mr. Rippert from exercising options which, under the terms of the 2016 and 2018 Non-Qualified Stock Option Agreements, he is permitted to exercise.

107.    On information and belief, Arch prevented Mr. Rippert from exercising stock options and determined that he forfeited all stock options Arch awarded him because Arch terminated Mr. Rippert on July 19, 2019.

108.    However, pursuant to the Non-Qualified Stock Option Agreements, options are forfeited only if Arch terminates Mr. Rippert for Cause.

109.    Arch did not have Cause to terminate Mr. Rippert.

110.    By preventing Mr. Rippert from exercising options he was entitled to exercise pursuant to the 2016 and 2018 Non-Qualified Stock Options Agreements, Arch breached the 2016 and 2018 Non-Qualified Stock Options Agreements, and thereby caused Mr. Rippert to suffer damages.

111.    By depriving Mr. Rippert of options Arch awarded him in the Non-Qualified Stock Option Agreements, Arch breached those Non-Qualified Stock Option Agreements, and thereby caused Mr. Rippert to suffer damages.

## COUNT TWO
## BREACH OF RESTRICTED SHARE AGREEMENTS

112.    Mr. Rippert repeats and incorporates by reference the allegations in Paragraphs 1-

111.

113.    Pursuant to the Restricted Share Agreements, Arch issued restricted shares of Arch stock to Mr. Rippert.

114.    On information and belief, Arch has determined that in July 2019, Mr. Rippert forfeited all restricted shares Arch granted to him in the Restricted Share Agreements.

115.    However, pursuant to the Restricted Share Agreements, restricted shares are forfeited only if Arch terminates Mr. Rippert for Cause.

116.    Arch terminated Mr. Rippert on July 19, 2019, but Arch did not have Cause to do so.

117.    By depriving Mr. Rippert of restricted shares Arch awarded him in the Restricted Share Agreements, Arch breached those Restricted Share Agreements, and thereby caused Mr. Rippert to suffer damages.

**COUNT THREE**
**BREACH OF PERFORMANCE RESTRICTED SHARE AGREEMENTS**

118.    Mr. Rippert repeats and incorporates by reference the allegations in Paragraphs 1-117.

119.    Pursuant to the Performance Restricted Share Agreements, Arch awarded and promised to provide Mr. Rippert with, restricted shares of Arch stock.

120.    On information and belief, Arch has determined that in July 2019, Mr. Rippert forfeited all restricted shares Arch awarded or promised to him in the Performance Restricted Share Agreements.

121.    However, pursuant to the Performance Restricted Share Agreements, restricted shares are forfeited only if Arch terminates Mr. Rippert for Cause.

122.    Arch terminated Mr. Rippert on July 19, 2019, but Arch did not have Cause to do

so.

123.    By depriving Mr. Rippert of restricted shares Arch awarded him in the
Performance Restricted Share Agreements, Arch breached those Performance Restricted Share
Agreements, and thereby caused Mr. Rippert to suffer damages.

## COUNT FOUR
## BREACH OF CONTRACTS TO PAY
## EARNED ANNUAL BONUS COMPENSATION AWARDS

124.    Mr. Rippert repeats and incorporates by reference the allegations in Paragraphs 1-
123.

125.    Arch promised to provide Mr. Rippert with annual bonus compensation awards
pursuant to the Second Amended and Restated Arch Capital Group Ltd. Incentive Compensation
Plan and the Incentive Compensation Plan.

126.    On information and belief, Arch determined Mr. Rippert is no longer entitled to
receive payment of annual bonus compensation awards under the Second Amended and Restated
Arch Capital Group Ltd. Incentive Compensation Plan and the Incentive Compensation Plan.

127.    However, under the Second Amended and Restated Arch Capital Group Ltd.
Incentive Compensation Plan and the Incentive Compensation Plan, Mr. Rippert is entitled to
payment of the annual bonus compensation awards, because he was terminated by Arch but not
with Cause.

128.    By depriving Mr. Rippert of the annual bonus compensation awards to which he
is entitled under the Second Amended and Restated Arch Capital Group Ltd. Incentive
Compensation Plan and the Incentive Compensation Plan, Arch breached its obligations to Mr.
Rippert, and thereby caused harm to Mr. Rippert.

## COUNT FIVE
## DECLARATORY JUDGMENT

129.    Mr. Rippert repeats and incorporates by reference the allegations in Paragraphs 1-128.

130.    Actual controversies exist between Mr. Rippert and Arch concerning the following:

a.    Whether Mr. Rippert forfeited all stock options Arch granted him pursuant to the Non-Qualified Stock Option Agreements because of Arch's termination of Mr. Rippert's employment on July 19, 2019;

b.    Whether Mr. Rippert forfeited all restricted shares Arch awarded him pursuant to the Restricted Share Agreements because Arch terminated Mr. Rippert's employment on July 19, 2019;

c.    Whether Mr. Rippert forfeited all restricted shares Arch awarded him pursuant to the Performance Restricted Share Agreements because Arch terminated Mr. Rippert's employment on July 19, 2019; and

d.    Whether Mr. Rippert forfeited his right to receive payments of annual bonus compensation awards he earned pursuant to the Second Amended and Restated Arch Capital Group Ltd. Incentive Compensation Plan and the Incentive Compensation Plan because t Arch terminated his employment on July 19, 2019.

WHEREFORE, Mr. Rippert respectfully prays the Court:

1.    Enter judgment in his favor on all Counts of the Complaint;

2.    Award him damages in an amount to be determined at trial;

3.      Declare as follows:

    a.   Mr. Rippert did not forfeit any stock options Arch granted him pursuant to the Non-Qualified Stock Option Agreements due to Arch's termination of Mr. Rippert's employment on July 19, 2019;

    b.   Mr. Rippert did not forfeit any restricted shares Arch awarded him pursuant to the Restricted Share Agreements due to Arch's termination of Mr. Rippert's employment on July 19, 2019;

    c.   Mr. Rippert did not forfeit any restricted shares Arch awarded or promised to him pursuant to the Performance Restricted Share Agreements due to Arch's termination of Mr. Rippert's employment on July 19, 2019; and

    d.   Mr. Rippert did not forfeit his entitlement to receive payments of annual bonus compensation awards he earned pursuant to the Second Amended and Restated Arch Capital Group Ltd. Incentive Compensation Plan and the Incentive Compensation Plan due to Arch's termination of his employment on July 19, 2019;

4.      Award him costs and reasonable attorneys' fees; and

5.      Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Andrew Rippert demands a trial by jury of all issues so triable.

Dated: October 29, 2019

Respectfully submitted,

PLAINTIFF
ANDREW RIPPERT

By his attorneys,


/s/ J. Mark Dickison
J. Mark Dickison (BBO #629170)
John R. Bauer (BBO #630742)
LAWSON & WEITZEN, LLP
88 Black Falcon Avenue
Boston, MA 02210
Telephone (617) 439-4990
Facsimile (617) 439-3987
mdickison@lawson-weitzen.com
jbauer@lawson-weitzen.com